## United States District Court, District of Nebraska

| | |
|---|---|
| Nikeisha Jones, individually and on behalf of Jason Dwight Griffin, her minor child; Zamya Spurlock; and Marquita Jones; <br><br> Plaintiffs, <br><br> v. <br><br> Sergeant Zachary B. Petrick, and and John Doe Officers Nos. 1-6 in their individual capacities, <br><br> Defendants. | Case No. 8:25-cv-447 <br><br><br> **Complaint** <br> **(Civil Rights)** |

For their complaint against Sergeant Zachary B. Petrick, Defendant, Nikeisha Jones ("Nikeisha") and Marquita Jones ("Marquita"), state and alleges as follows:

### Parties and Jurisdiction

1.     Nikeisha Jones, and her sister Marquita Jones, are residents of Omaha, Douglas County, Nebraska.

2.     Nikeisha is the natural guardian of her minor child, Jason Dwight Griffin.

3.     Zamya Spurlock is a resident of Omaha, Douglas County, Nebraska.

4.     Sergeant Zachary B. Petrick, Defendant, is a law enforcement officer employed by the Omaha Police Department. At all times relevant herein, he was acting under color of law. He is sued in his individual capacity.

5.     John Does Officers Nos. 1-5 are officers employed by the Omaha Police Department who unlawfully entered Ms. Jones' home and unlawfully pointed guns at children, but whose identity is not yet known. They are sued in their individual capacity.

6.     This court exercises jurisdiction pursuant to *Nev. Rev. Sta. §* 24-302.

7.     All material events alleged herein occurred in Omaha, Douglas County, Nebraska.

## Facts

8.     At all relevant times, Nikeisha and Marquita Jones resided in a one-story residential home with Jason Griffin, Zamya Spurlock and others near the intersection of 50th and Pratt Streets in Omaha.

9.     In the middle of the night, in either the final hours of December 12, 2023 or the early morning hours of December 13, 2023, Omaha police surrounded Jones' home.

10.     Approximately seven officers responded to the home after receiving a report of a disturbance occurring either in the vicinity of the home or several blocks away at a home where Nikeisha's son, Jameine Lewis, was visiting his girlfriend

11.     One or more of the officers banged on the doors and windows seeking entry.

12.     No disturbance occurred at the home prior to the officers' arrival.

13.     Nikeisha and Marquita, along with eleven children, most of whom were under the age of ten, were in their beds trying to sleep. Only one light was on, in a bedroom occupied by Marquita. Lewis had returned home and he, his girlfriend, and three others were present in the basement.

14.   When officers banged on the doors and windows, Nikeisha climbed out of bed, removed two weapons from the safe, one for her and one for Marquita, and moved through her quiet home to the front porch door where she greeted police.

15.   Standing with officers who were banging on her door, Defendant requested Nikeisha's consent to officers entering her home.

16.   Ms. Jones politely declined consent, explaining no disturbance had occurred at the home.

17.   Ms. Jones' exercise of her right to decline consent seemed to upset the officers. One, believed to be Defendant, complained they would have to wake a judge up in the middle of the night to get a warrant.

18.   When Nikeisha refused entry, Defendant left the area of the front door for roughly twenty minutes, then returned with a shield and a team of officers.

19.   By then, Marquita, Jason Griffin, and the children were near the front door. Marquita wanted to demonstrate to officers that everyone inside was okay.

20.   Ms. Spurlock was in an adjacent room, crying.

21.   When officers approached with the shield, however, Defendant was not interested in speaking further with Nikeisha or Marquita.

22.   One officer forcibly pulled Ms. Jones into the front yard.

23.   As Ms. Jones watched from her yard, other officer officers forcibly entered the home, first by taking turns kicking it and then by use of a metal battering ram.

24.   Marquita, Jason Griffin, and the children were standing in the living room near the front door when officers invaded the home.

25.   The officers did not seek a warrant.

26.    There existed no emergency necessitating immediate entry of the home to protect life or property.

27.    Defendant did not believe there was an exigency requiring immediate entry. If he had, he would have directed officers to enter long prior to the passage of twenty minutes.

28.    Any belief there on the part of Defendant there existed an exigency requiring immediate entry would have been objectively unreasonable.

29.    While interacting with Ms. Jones, officers neither observed nor heard any indication a disturbance had occurred at the home.

30.    No officer had observed an injured party.

31.    No officer received a report that anyone had been injured.

32.    Nobody had called requesting assistance at the home.

33.    No officer observed evidence a firearm had been discharged inside or outside of the home.

34.    Neither Sergeant Petrick, nor any reasonably well-trained officer present, could have reasonably believed an emergency required their immediate entry.

### Unlawful Entry

35.    Officers did not immediately enter the home. Instead, they gathered in the front yard for approximately twenty minutes.

36.    While they were gathered, Sergeant Petrick and others discussed, among other things, whether they had sufficient evidence to secure a warrant.

37.    After twenty minutes, officers acting at Sergeant Petrick's command kicked in the front door of the home.

38.     After the door was kicked open, a lead officer entered the home carrying a shield and yelling loud verbal commands to all present.

39.     John Does Nos. 1 – 6  followed the lead officer into the home, moving throughout the home, including the basement.

40.     Sergeant Zachary Petrick, Defendant, gave authorization for the entry without securing a warrant and in the absence of any exigency justifying a warrantless nighttime entry of the home.

41.     As to every person residing in the home, the entry violated their right to privacy conferred by the Fourth Amendment of the United States Constitution.

### Excessive Force

42.     When John Does Nos. 1 – 6 entered the home, each of them had their firearms drawn and pointed them at all who were present, including Marquita, Jason Griffin, and the small children.

43.     Officers continued to keep their weapons drawn until the basement of the home was cleared, a period of several minutes.

44.     The manner in which Defendants entered caused Nikeisha, Marquita, and Jason Griffin to suffer emotional harm and anxiety.

45.     Drawing and pointing guns at Plaintiffs and the children present was an objectively unreasonable use of force under the circumstances then known to officers.

### Damages

46.     Each Plaintiff has suffered trauma, anxiety and emotional distress as a result of Defendants' actions.

47.     Ms. Jones' six foster children were removed from her home the next day based upon the raid, causing Ms. Jones to suffer lost wages totaling an amount to be proven at trial, but approximately $8,000.00.

WHEREFORE, Plaintiffs prays the court enter judgment in their favor and against Defendants awarding economic and compensatory damages that will fairly compensate her for the damages incurred.

### Request for Jury Trial

Plaintiff requests trial by jury of all claims alleged herein.

NIKEISHA JONES,

Plaintiff

By: /s/ *Adam J. Sipple, #20557*
SIPPLE LAW
12020 Shamrock Plaza
Suite 200
Omaha, NE 68154
402.778-5055
adam@sipple.law
Attorney for Plaintiffs